IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02261-RBJ

DENETTE GARCIA

Plaintiff,

v.

METROPOLITAN STATE UNIVERSITY OF DENVER et al.

State Defendants.

# MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the Board of Trustees of Metropolitan State University of Denver, Janine Davidson, Dave Haden, Kelli Frank, and Kristen Lyons (collectively, the "State Defendants") hereby move for summary judgment on the claims asserted by Danette Garcia and state as follows:

## UNDISPUTED FACTS

1. Ms. Garcia enrolled as a student at MSU and requested accommodations pursuant to the Rehabilitation Act, 29 U.S.C.A. § 701. ECF # 28 at ¶¶ 27. In the fall of 2015, Ms. Garcia obtained a letter from MSU's Access Center documenting accommodations she could receive for her claimed disability of post concussive syndrome. *See* ADA Accommodation Notification Letter attached hereto as Exhibit A; *see* also ECF # 28 at ¶ 27.

2. In 2018, Ms. Garcia enrolled in a psychology class taught by Bridget Kelsey, Ph.D. ECF # 28 at ¶ 35; ECF. # 31 at pg. 2; *see also* ECF # 17-6. Ms. Garcia sent threatening emails to Professor Kelsey when Ms. Garcia failed to complete assignments and received poor grades. ECF # 17-6; *see also* Affidavit of Layton Curl,

Ph.D., attached hereto as Exhibit B, at ¶ 3. Professor Kelsey refused to change these grades. *Id.*; *see also* ECF 31 at pg. 2; ECF. # 28 at ¶ 35. Ms. Garcia was directed by the Behavioral Intervention and Student Conduct Office to refrain from sending threats and only communicate with Professor Kelsey regarding questions and information related to course materials. Ex. B at ¶ 4. Ms. Garcia did not comply with this directive. *Id.* After reviewing Ms. Garcia's threatening emails, giving Ms. Garcia notice that she may have violated the Student Code of Conduct and an informal hearing, MSU suspended Ms. Garcia for attempting to influence the academic process through threats and failure to comply with MSU directives. *See* ECF. # 17-6; Ex. B at ¶ 5.

3. When the suspension was lifted, Ms. Garcia enrolled in two courses, an online child psychology class taught by Kristen Lyons, Ph.D. and a history course. ECF # 28 at ¶¶ 31; 33-34. Ms. Garcia requested, and the Director of MSU's Access Center sent, an Accommodation Notification Letter to Professor Lyons. ECF # 28 at ¶¶ 39-44; *see also* Accommodation Notification Letter attached hereto as Exhibit C. The letter states Ms. Garcia is entitled to "100% additional time" on quizzes and exams. *Id.*

4. At the beginning of class, Professor Lyons issued a syllabus, which explained the policy for requesting re-scoring of tests. ECF # 28 at ¶ 56; *see also* Syllabus attached hereto as Exhibit D. If a student wants to challenge a grade, Professor Lyons' policy requires the students to provide evidence from the textbook or notes for why the selected answer should be counted as correct. Ex. D; ECF # 28 at ¶ 57.

5. Shortly after class began, Ms. Garcia started complaining about the poor grades that she had earned. For example, Ms. Garcia failed to follow the instructions on an assignment that required the submittal of articles on original research and received a

poor grade. ECF # 17-2 at pg. 7; ECF. # 28 at ¶ 48. On February 24, 2019, Ms. Garcia blamed Professor Lyons for her poor grade and failure to follow instructions. ECF # 17-2 at pgs. 4-7.

6. Additionally, Ms. Garcia blamed Professor Lyons for her own poor performance on a test. *Id.* at pgs. 1-3. Ms. Garcia claimed the test questions that she missed "were quite vague or misspelled and misleading." *Id.*; ECF # 28 at ¶ 51. At the end of her email, Ms. Garcia asks for credit on questions that she believes are "confusing." ECF 17-2 at pg. 1.

7. After receiving the February 24, 2019 email exchange, Professor Lyons filed a CARE report about Ms. Garcia's demand for a grade change and inappropriate email correspondence. ECF # 17-1; ECF. # 28 at ¶ 53.

8. On February 26, 2019, Professor Lyons reminded Ms. Garcia about the grade appeal policy, which requires that Ms. Garcia provide evidence from textbooks or notes to explain why the answer she chose should be counted as correct. ECF # 17-2 at pg. 2; ECF 28 at ¶ 57. Ms. Garcia refused to provide the information necessary for a grade appeal and, instead, began falsely claiming Professor Lyons is "unethical," "misleading," and "setting students up to fail." ECF # 17-2 at pg. 3; ECF 28 at ¶ 58. Additionally, Ms. Garcia threatened complaints against Professor Lyons with DORA and the President of MSU. ECF # 17-2 at pg. 3; Ex. B at ¶ 6.

9. Due to the tone of the February 26, 2019 emails, Professor Lyons filed another CARE report. *See* CARE report attached hereto as Exhibit E. This CARE report documents that Ms. Garcia's emails concerning a grade change "are showing a pattern of increased hostility." *Id.; see also* ECF # 28 at ¶ 73.

10. Professor Lyons also contacted her supervisor, Professor Layton Curl, who is the chairperson for the Department of Psychology. *Id.*; *see also* Ex. B at ¶ 2. Professor Curl issued an Incident Report to the Dean of Students, stating Ms. Garcia "further threatens Dr. Lyons with multiple complaints to DORA and the MSU Denver President, in an apparent veiled attempt to coerce Dr. Lyons to falsely adjust her grade." *See* ECF # 17-8 at pg 1; Ex. B at ¶ 6; ECF 28 at ¶ 58. "Ms. Garcia is demonstrating a pattern of unprofessional behavior, as previously demonstrated." ECF # 17-8 at pg 1; *see also* Ex. B at ¶ 7. Professor Curl refers to Ms. Garcia's past violations (the suspension related to Professor Kelsey) to argue that Ms. Garcia's communications with Professor Lyons "clearly demonstrat[e] a pervasive pattern of behavior..." *Id.; see also* Ex. B at ¶¶ 8-9. Based upon the threats to Professor Kelsey and the threats to Professor Lyons, Professor Curl states, "Ms. Garcia's repeated violations and lack of improvement indicate she lacks the capacity to remediate her behavior. As such, options to resolve the situation permanently should be considered for the welfare of faculty members." ECF # 17-8 at pg. 2; Ex. B at ¶¶ 8-9.

11. Professor Curl was aware of the facts surrounding Ms. Garcia's first suspension from MSU. Ex. B. He was Professor Kelsey's supervisor at the time that Ms. Garcia threatened Professor Kelsey. *Id.* at ¶ 2. Professor Curl's reference to Ms. Garcia's "capacity to remediate" in the February 26, 2016 Incident Report was a reference to Ms. Garcia's threats to Professor Kelsey, suspension, and failure to understand and appreciate why students cannot make threats to obtain a grade change. Ex. B at ¶¶ 8-9. Professor Curl's reference to "capacity to remediate" had absolutely

nothing to do with Ms. Garcia's disability and cognitive issues resulting from a claimed head injury. *Id.* at ¶ 9.

12. On March 1, 2019, the Behavioral Intervention and Student Conduct Office sent a letter to Ms. Garcia notifying her that she may have violated MSU's Student Code of Conduct (the "Notice"). *See* ECF. # 17-3; ECF # 28 at ¶ 75. The Notice explained that MSU believed Ms. Garcia may have violated provisions of the Student Code of Conduct that prohibit verbal threats, failure to comply with reasonable requests from university officials, and attempts to influence the academic process. *Id.* at pg. 1. The Notice includes a "No Contact" provision, which prohibits Ms. Garcia from having any contact with Professor Lyons, including prohibiting participation in Professor Lyons' online class. *Id.* at pg. 2; *see also* Declaration of Kelli Frank attached hereto as Exhibit F at ¶ 6. The Notice did not say Ms. Garcia was suspended. *See id.*

13. Ms. Garcia was not suspended from MSU at the time of the Notice. *See* Ex F at ¶ 5. This is evidenced by the fact that Ms. Garcia was simultaneously enrolled in a history course and continued participating in that class. *Id.* at ¶¶ 3; 5; *see also* ECF # 28 at ¶ 101. Indeed, Ms. Garcia admits that she was not prohibited from attending the history course that semester. *See* ECF # 28 at ¶ 101.

14. The Notice mandated a meeting with Kelli Frank, the Director of Behavioral Intervention and Student Conduct, so that Ms. Garcia could share her perspective about what happened, discuss the reported incidents and review potential consequences and options. ECF # 17-3 at pg. 2. The Notice mandated that Ms. Garcia contact Ms. Frank to schedule a meeting by March 14, 2019. *Id.* The Notice also expressly states "[P]lease be aware that failure to comply with this letter violates the

Student Code of Conduct, namely Article III B.6 'Failure to comply with the directions of University Officials . . .' " *Id.*

15. Instead of scheduling the meeting, Ms. Garcia emailed her perspective of what happened to Ms. Frank on March 1, March 4, and March 5, 2019, asking to remain in Dr. Lyons' class. *See* emails attached hereto as Exhibit G.

16. Ms. Frank responded to Ms. Garcia's emails by proposing multiple dates for a meeting. *See* March 8, 2019 email attached hereto as Exhibit H. Ms. Garcia never provided Ms. Frank with a date. *See* Ex. G; Ex. F at ¶ 8. Instead, Ms. Garcia threatened Ms. Frank that her lawyer would take MSU to trial. *See* Ex. G at pg. 6.

17. MSU found Ms. Garcia responsible for violating Article III, Section B, subsections: (03.a) verbal abuse; (06) failure to comply with reasonable requests from University officials; and (21) attempting to influence the academic process through explicit or implied threats and suspended Ms. Garcia on April 10, 2019. ECF # 17-4; ECF # 28 at ¶ 117; Ex. F at ¶ 9.

## LEGAL ARGUMENT

Ms. Garcia contends that her disability was the motivating factor in MSU's decision to suspend her and that her suspension rises to the level of unlawful discrimination based on disability in violation of the Rehabilitation Act, 29 U.S.C.A. § 701. ECF # 28 at ¶¶ 178-203. Additionally, Ms. Garcia claims that MSU suspended her without giving her notice and an opportunity to be heard, in violation of her Due Process rights. The undisputed evidence demonstrates otherwise.

## I. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[T]he relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Bringaman v. Kansas City Power & Light Co.,* 1 F.3d 976, 980 (10th Cir. 1993).

A judge's function at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *Anderson,* 477 U.S. at 248-49. A fact is material if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. Conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue' for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**II. Ms. Garcia was suspended for repeated violations of the same provisions of the Student Code of Conduct, not because of her disability.**

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability … shall, *solely* by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency…." 29 U.S.C. § 794(a) (emphasis added).[1] To state a claim under the Act, "a plaintiff must prove (1) that he is a 'handicapped individual' under the Act, (2) that he is 'otherwise qualified' for the [benefit] sought, (3) that he was [discriminated against] solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992).

In this case, Ms. Garcia cannot satisfy the third element of a Rehabilitation Act claim. To succeed on her Rehabilitation Act claim, Ms. Garcia must establish that she was excluded "solely by reason of" her disability." *Halpern v. Wake Forest University Health Sciences,* 669 F.3d 454, 461 (4th Cir. 2012); *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134, 1144 (10th Cir. 2005). "The word *solely* provides the key: the discrimination must result from the handicap and from the handicap alone." *Johnson by Johnson v. Thompson*, 971 F.2d at 1493 (10th Cir. 1992) (emphasis in original).

The only discrimination that Ms. Garcia complains about is her suspension, which was based upon (1) verbal abuse, (2) failure to comply with reasonable request from a

[1] Cases under the Americans with Disability Act and the Rehabilitation Act may be cited interchangeably for the two acts. *See Toyota Motor Manuf. V. Williams,* 534 U.S. 184, 193-94 (2002).

university official; and (3) attempting to influence the academic process through explicit or implied threats. *See* ECF # 17-4; ECF # 28 at ¶117. This incident was Ms. Garcia's second offense of sending unprofessional and threatening communications to a professor. *Id.; see also* ECF # 17-6; Ex. B at ¶¶ 3-4; Ex. F at ¶ 10. Ms. Garcia was previously suspended after being found responsible for violating two of the same provisions of the Student Code of Conduct. *See* ECF # 17-6; Ex. B at ¶¶ 3-4; Ex. F at ¶ 10. Even if Ms. Garcia's unprofessional and threatening emails to Professor Lyons were "ultimately rooted in accommodated disabilities, MSU is not required to overlook misconduct, even if that misconduct resulted from …disability." *Corrigan v. Board of Trustees of Metropolitan State Univ. of Denver,* 19-cv-02475-CMA-NYW, 2020 WL 3567049, *6 (D. Colo. July 1, 2020) (quoting *Profita v. Regents of the Univ. of Colo.*, 709 Fed. Appx. 917, 920–21 (10th Cir. 2017)). Indeed, "[t]he law does not require the school to ignore misconduct that has occurred because the student subsequently asserts it was the result of a disability." *Corrigan,* 2020 WL 3567049 at *6 (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012)); *see also Childress v. Clement*, 5 F. Supp. 2d 384, 391 (E.D. Va. 1998) (holding that a university is not required to "simply waive" its student code of conduct to accommodate a disability). Because Ms. Garcia has not proven and cannot prove that her suspension was based "*solely"* upon her disability, MSU is entitled to summary judgment as a matter of law.

**III. Ms. Garcia received all of the process that she was entitled to receive, but she refused to take advantage of her due process rights.**

Ms. Garcia claims her procedural due process rights were violated by Ms. Frank and Professor Lyons,[2] in their individual capacities, by falsely claiming they issued an interim suspension without giving her notice of the charges against her and an opportunity to be heard. ECF # 28 at ¶¶ 232-235. Additionally, Ms. Garcia claims that Mr. Haden and Ms. Frank violated her procedural due process rights because she did not receive notice of the charges against her or an opportunity to be heard before she was suspended for one year. *Id.* at ¶¶ 236-240. Ms. Garcia alleges that President Davidson and Mr. Haden enforce disciplinary actions for purposes of prospective injunctive relief.

With regard to procedural due process in the student context, "[w]here the discipline consists of suspending a student for 10 days or less, the student is entitled to oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). Disciplinary proceedings need not "afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or call his own witnesses to verify his version of the incident," *id.* at 583, and the Supreme Court has referred to such procedures as "an informal give-and-take between student and disciplinarian." *Id.* at 584. Of course, students who pose "an ongoing threat of disrupting the academic process may be immediately removed from school." *Id.* at 582-83.

"The Supreme Court has not answered the question of what, if any, additional process is required for a long-term suspension or expulsion." *Watson ex rel. Watson v.*

---

[2] Professor Lyons works in the psychology department. She has no authority to issue suspensions of any kind on behalf of MSU. *See* Ex. Eat ¶ 2; Ex. F at ¶ 2. For this reason, Ms. Garcia's procedural due process claim against Professor Lyons must be dismissed.

*Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001). However, the Tenth Circuit has identified what is *not* required: "written notice specifying the charges, legal counsel, the presentation of evidence, the right to cross-examine witnesses, an impartial board, a transcript of the hearing, and independent review of the decision." *Id.* at 1242-43; *see also Brown v. Univ. of Kan.*, 599 F. App'x 833, 837 (10th Cir. 2015) (holding that procedural due process did not require "the equivalent of a trial" before expelling a student for providing a false application).

Here, Ms. Garcia received all of the process that she was entitled to receive. In the Spring 2019 semester, Ms. Garcia was enrolled in Professor Lyons class and a history course. *See* ECF # 28 at ¶¶ 31; 101; Ex. F at ¶ 3. Ms. Garcia received a pre-suspension notice. *See* ECF # 17-3; ECF 28 at ¶ 71-75. The Notice described the complaint against Ms. Garcia and explained how her conduct may have violated several different parts of the Student Code of Conduct. *See id.* Ms. Garcia alleges that she received the Notice. ECF # 28 at ¶¶ 71-75. Therefore, she cannot dispute this fact.

Ms. Garcia was given an opportunity to be heard. Pursuant to the Notice, Ms. Garcia was required to schedule a meeting with Ms. Frank. ECF # 17-3 at pg. 2; Ex. F at ¶ 7. The Notice expressly stated "[y]ou must contact me no later than March 14, 2019 to set the appointment." *Id*. Although Ms. Garcia sent Ms. Frank multiple emails asking to remain in Professor Lyons' class, Ms. Garcia never offered a date for a meeting with Ms. Frank as required. *See* Ex. G; ECF # 28 at ¶¶ 90-96; Ex. F at ¶ 8. In an attempt to help Ms. Garcia comply with the notice, Ms. Frank proactively emailed Ms. Garcia three dates for a telephone meeting, March 11, 12 and 13. *See* March 8, 2019 email attached hereto as Exhibit H. Instead of selecting one of the dates, Ms. Garcia told Ms. Frank that her

attorney said they would set it for trial at the end of the month. *See Id.* at pg. 5; Ex. F at ¶ 7.

Ms. Garcia has produced no evidence to date demonstrating that she scheduled a meeting with Ms. Frank on or before March 14, 2019, as required by the Notice. The undisputed evidence unequivocally establishes that *before* the suspension, Ms. Garcia was provided all of the process that is required. *See* 17-3; Ex. F at ¶¶ 4-8. Ms. Garcia simply failed or refused to take advantage of her due process rights.

Contrary to allegations contained in paragraph 83 of the Amended Complaint and Jury Demand, the Notice was not an interim suspension. Ex. F at ¶ 5. Ms. Garcia conceded that she "was not prohibited from attending the History class that she was also enrolled in during the Spring 2019 semester" in her Amended Complaint and Jury Demand. ECF # 28 at ¶ 101. Ms. Garcia completed the history course and, thus, has not disputed and cannot dispute this fact. Ex. F at ¶ 5; ECF # 28 at ¶ 101.

Based upon the evidence, Ms. Garcia unquestionably received notice and an opportunity for an informal hearing before the April 10, 2019 suspension, as *Goss v. Lopez* requires. Under the circumstances, the State Defendants are entitled to summary judgment as a matter of law.

## IV. Professor Lyons and Ms. Frank are immune.

Public officials acting in their individual capacities are presumed to have qualified immunity from civil rights claims, *Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990), and are entitled to qualified immunity in all but the most exceptional cases. *Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 516 (10th Cir. 1998). To overcome the presumption of immunity, Ms. Garcia must satisfy a "heavy two-part burden," *Buck v.*

*City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008), by proving (1) that her factual allegations establish the violation of a federal right and (2) that the right was clearly established at the time of the violative conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Failure on either qualified immunity element is fatal to the plaintiff's cause." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011). As established above, the undisputed evidence demonstrates that Ms. Garcia cannot prove a due process violation.

Further, Ms. Garcia cannot establish that her alleged rights were clearly established. A right is clearly established when a Supreme Court or Tenth Circuit precedent is on point, making the constitutional violation apparent. *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017); *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017). The claimed precedent cannot define the right at a high level of generality. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Rather, the precedent must be particularized to the facts. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). Ms. Garcia's burden "is quite heavy," because she must "demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992). "Ultimately, we consider whether our precedents render the legality of the conduct undebatable." *Lowe*, 864 F.3d at 1211 (emphasis added).

The relevant question here is "what due process protections were clearly established at the time Plaintiff was suspended …." *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1084 (D. Colo. 2017). As of 2014, a university student facing a disciplinary suspension did not have a clearly established due process right to confront accusers, present evidence, or cross-examine witnesses. *Id.* Nor was it a clearly

established due process violation for an investigator to evaluate the credibility of witnesses, weigh evidence, and determine—in their sole discretion—whether a student violated a code of conduct. *Id.*

The State Defendants have found neither a Supreme Court nor a Tenth Circuit Court of Appeals opinion requiring a university to delay a conduct hearing until a student hires an attorney and gets around to scheduling a hearing. No reasonable professor or school administrator would believe there to be a violation of due process if a student is repeatedly asked to schedule an informal meeting to discuss the alleged misconduct, but the student fails or refuses to schedule a meeting. Therefore, the State Defendants sued in their individual capacities are immune.

## CONCLUSION

Based upon Ms. Garcia's own allegations, emails, and Student Conduct files, the emails of Ms. Frank, the affidavit and signed declaration, Ms. Garcia has not proven and cannot prove a violation of the Rehabilitation Act or Due Process. The undisputed evidence demonstrates that Ms. Garcia was suspended for sending unprofessional emails containing threats to support her demand for a grade change, not because of her claimed disability. Furthermore, the undisputed evidence demonstrates that Ms. Garcia was provided due process. Ms. Garcia simply failed or refused to take advantage of the process offered. Because Ms. Garcia has not provided and cannot provide a single fact demonstrating MSU, President Davidson, Mr. Haden, Ms. Frank, or Professor Lyons violated the law, summary judgment is appropriate.

WHEREFORE, the State Defendants respectfully request the Court enter summary judgment in the State Defendants' favor and against Ms. Garcia on her Rehabilitation Act and Due Process claims.

Dated this 2nd day of April, 2021.

PHILIP J. WEISER

Attorney General

*s/ Allison R. Ailer*

JACQUELYNN RICH FREDERICKS*
First Assistant Attorney General
ALLISON R. AILER*
Senior Assistant Attorney General
Civil Litigation & Employment Section
J. PATRICK HIZON WARWICK-DIAZ*
Assistant Attorney General

Attorneys for *Defendants*
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6603/(720) 508-6617
Email:
Jacquelynn.richfredericks@coag.gov
Allison.ailer@coag.gov
Patrick.Warwick-Diaz@coag.gov

*Counsel of Record

CERTIFICATE OF SERVICE

I certify that I served the foregoing MOTION FOR SUMMARY JUDGMENT upon all parties herein by emailing this 2nd day of April 2021 and depositing a copy in the U.S. Mail, postage prepaid to the following address:

Danette Garcia
13854 E. Lehigh Avenue Apt.
H
Aurora, CO 80014
danitalopez91@gmail.com

*s/ Allison R. Ailer*