IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-02261-RBJ

DENETTE GARCIA,

Plaintiff,

v.

METROPOLITAN STATE UNIVERSITY OF DENVER,
KELLI FRANK, and
KRISTEN LYONS,

Defendants.

---

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on defendants' motion for summary judgment. ECF No. 90. For the following reasons, the motion is GRANTED.

## I. FACTUAL BACKGROUND

The following facts are not in dispute. Denette Garcia ("plaintiff") worked in the healthcare industry as a home health nurse. While at a patient's house, Ms. Garcia slipped on a rug and hit her head and suffered a traumatic brain injury. She was diagnosed with a closed head injury and experienced numerous limitations that became more pronounced over time. ECF No. 102 at 26. One of her treating physicians wrote

> Ms. Garcia evidences expressive aphasia and slight dysarthria, as well as non-fluent speech. She has very signficant functional and clinical speech and language deficits, including frequent anomia. She has impaired pragmatic communicability ability, is verbose, tangential, and does not respond to non-verbal turn-taking cues. She has poor

> topic maintenance, and is an extremely poor historian. Non-fluent expressive speech interferes very significantly with functional communication.

*Id.* at 29. Translated into layman's terms, Ms. Garcia struggles with communicating fluidly and coherently as a result of her head injury.

Due to her injury and the resulting complications, Ms. Garcia became unable to perform her duties as a home health nurse. She thus enrolled as a student at Metropolitan State University of Denver ("MSU") to secure a new degree and career. Upon enrolling Ms. Garcia worked closely with MSU's Student Access Center ("Access Center"), the department that advises, assists, and accommodates students with disabilities. The center provided Ms. Garcia with numerous accommodations, including seating Ms. Garcia at the front of the class, giving her extra time on tests, and converting textbooks to a more accessible format. ECF No. 90-1 at 1. However, none of the accommodations related to her communication skills in or outside of class.

In 2018 Ms. Garcia enrolled in Professor Bridget Kelsey's psychology class. ECF No. 28 at ¶35. Ms. Garcia sent Professor Kelsey several unprofessional emails that accused Professor Kelsey of unfair grading practices. As a result of these emails on July 5, 2018 MSU issued a restriction that stated, "[u]ntil this case has been resolved, you are permitted to only communicate with [Dr. Kelsey] regarding questions/information related to the course material. You must refrain from using intimidating language . . . . If this continues, you will be prohibited from any further communication with [Dr. Kelsey]." ECF No. 17-6 at 6. On July 6, 2018, one day after Ms. Garcia received the restriction, she again communicated with Professor Kelsey. That email read

> [A]lso when Blackboard checked they said that it is not a technical issue for opening the discussion they said it is a professor issue and sometimes the professor don't want to open it or it's pure laziness. Do you have children? How would you feel if someone did bad to them like you did to me? If your intentions were bad Mrs. Bridget towards innocent people then God will give you bad luck then especially health, but because of you I have to drop this class but I will make sure that your not changing other peoples scores or testing anymore as well. I'll pursue this in court, because I did take screenshots of the testing before it was changed by you intentionally.[1]

ECF No. 17-6 at 7. Ms. Garcia emailed Professor Kelsey again on July 6, 2018. That email read

> Mrs. Bridget, may I make a suggestion before I go? If your changing grades without students knowledge and arguing with them, or being unethical, and if you have other addictions or disorders like food or drug for example, it's not a bad idea to get a psych evaluation for yourself.

ECF No. 17-6 at 8. Due to Ms. Garcia's violating the restriction by continuing to send unprofessional, threatening emails, Ms. Garcia was suspended sometime in 2018. ECF No. 90-2 at 2.

Following that suspension Ms. Garcia enrolled in Professor Kristen Lyons's Spring 2019 child psychology course. Professor Lyons's assignments in the course included discussion posts, quizzes, examinations, and a research paper. ECF No. 90-4 at 2–3. Ms. Garcia struggled with several assignments and received poor grades. For instance, Ms. Garcia did not follow instructions on the first paper assignment. According to the assignment's instructions the students were to read an original academic journal article and answer a series of questions about it. One requirement was that the selected article be an original study that had a sample, method, and results section. ECF No. 17-8 at 3. Rather than choosing an original article, Ms. Garcia selected a review article that summarized past research and thus did not meet the assignment's

[1] Ms. Garcia's emails contain numerous spelling and typographical errors. The Court transcribes them as written but chooses not to include the sic notation after every error.

requirements. Ms. Garcia accordingly did not receive a high grade. *Id.* Ms. Garcia emailed Professor Lyons about the assignment. That email read

> Hello there kiddo . . . . I was under the impression that we were able to look for articles of our choosing to write a research paper, if we are writing a paper to your standards and likening then you'll never know how to write a paper in our language and words . . . . Can you please try and allow these kids to explore on their own what they want pertaining to the research so that they are able to stand on their own two feet. Psychology is really difficult because it's not a valid field of practice because Darwin and Froyd based their beliefs on theory while smoking Marijuana . . . . we must work together as a team to see what works but if the professor is working against us then we will never learn. For example: Try to send us a sample of an approved article via blackboard on the first day of class so that were not trying to guess? This approach would have worked better, because if you had sent a sample of the articles when class started then I wouldn't have been given a bad grade twice by you.

ECF No. 17-8 at 3.

Ms. Garcia also received a low score on an exam, and she contacted Professor Lyons to complain about how certain exam questions were worded. That email read

> I also wanted to see if I could receive a rescore on the exam, a lot of the exam questions were quite vague and did not have proper Grammar and spelling. . . . And then some of the answers were not what we read about unless I have the wrong book . . . . If you don't mind me saying whoever wrote this test is not very good in the English language because they are not using sentences, verbs, nouns, etc, the way they are supposed to be used which can mislead students and cause them to choose the wrong answer like myself because it confuses the human brain, the material I noticed is probably from a Latin country because only they say MacDonald's. What I'm trying to say is that the material was most likely written by a Latin country which make it difficult for a student to understand because although they are speaking in English, a Latin person is going to speak English as if they are speaking in in their language which will make their verbiage totally different in English, like some of the questions in the first exam.

ECF No. 17-2 at 1. In response to this email, Professor Lyons reminded Ms. Garcia of the exam appeals process outlined in the syllabus. Professor Lyons' email reads

> The exam question appeal policy requires that you give evidence from the textbook or notes for why your selected answer should be counted as correct. If you wish to appeal,

> please provide the number of the question and the evidence for why your answer should be allowed.

*Id.* at 2. Ms. Garcia did not follow Professor Lyons' instructions to submit her reasoning as to why her answers should be counted as correct. Instead, Ms. Garcia wrote back

> I already gave you the numbers. Mrs. Lyons it is unethical to give a test that doesn't have the proper writing in English, and per msu requirements the material you use for the class cannot be made to trick or mislead students, or be set up to where it's going to make them fail, so I put in a complaint with the department of higher education and the college President since I'm paying you guys for the class, I will also sit down with DORA later. But I will say no more, and I will just get through the class. And then at the end of class I will sit down with you and have a meeting but right now all I want is to get through the class, I'm not going to argue if your not comprehending what is said, and we are not a daycare center.

ECF No. 17-8 at 2.

In response to these emails Professor Lyons contacted Professor Curl, the department chair for MSU's psychology department. Professor Curl suggested that she file an incident report with MSU. Professor Lyons did so. In that report Professor Lyons attached the email interactions she had with Ms. Garcia. She noted that she was concerned that the emails were showing a "pattern of increased hostility." ECF No. 17-9 at 2. She also stated that in response to an email that said she could go through the exam appeals process, the student "falsely accus[ed] me of being unethical, writing a test that is not written properly in English, and using material to trick or mislead students." *Id.* She concluded that "this is not an isolated incident, but the second time something like this has happened this semester. I am concerned that the pattern may escalate." *Id.*

Defendant Kelli Frank, the director of MSU's Behavioral Intervention and Student Conduct office, received the incident report. ECF No. 17-3 at 1. In response she opened an investigation into Ms. Garcia's alleged misconduct. *Id.* On March 1, 2019 Ms. Frank sent a

letter to Ms. Garcia that outlined the allegations against her. *Id*. It included extended excerpts from Professor Lyons's initial complaint. *Id*. It also included numerous citations to specific provisions of the student code of conduct, including Article III, Section B which prohibits students from using verbal abuse, threats, intimidation or coercion that is "sufficiently severe or pervasive that it alters the conditions of education or employment and creates an environment that a reasonable person would find intimidating, hostile or offensive." ECF No. 17-3 at 1. Additionally, the code of conduct prohibits students from failing "to comply with a reasonable request from University officials" and "influencing or attempting to influence the academic process through . . . threats." *Id*. Finally, the letter requested that Ms. Garcia not participate in Professor Lyons' class while the investigation was pending. *Id*.

Defendant Frank's letter further informed Ms. Garcia that she was required to meet with someone from her office to have a hearing. "During the hearing you will have the opportunity to discuss the reported incident(s), your actions, the potential consequences and your options." *Id*. The letter informed Ms. Garcia that she "had the right to have an advisor of your choosing to be present during any conduct hearing. Depending on the severity of the incident(s), your role in the incident(s), and your willingness and ability to accept responsibility for your actions, the Conduct Officer may refer you to our conflict resolution program." ECF No. 17-3 at 2. Ms. Frank gave Ms. Garcia three proposed dates for a telephonic hearing in which Ms. Frank, Ms. Garcia, and Mr. Sullivan, a faculty member from the Access Center, would be present. Ms. Garcia did not select one of the proposed dates and instead said that she and her lawyer would schedule "the trial" for the end of the month. Ms. Garcia also noted that such a meeting would be "useless." ECF No. 90-8 at 3.

In a separate email to Ms. Frank Ms. Garcia wrote that the "meeting is useless as Mr. Sullivan cannot explain why the professor wrote bad wording on a test and the presidents office said I would have to put in complaint against the professor with the presidents office and US dept of education, so Ms. Lyons was right when she told me to complain with MSU . . . ." *Id.* at 3. She also stated that she did not think any of her emails to Professor Lyons were threats, and that they were instead critiques of the test and only contained her opinions. *Id*. She wrote, "I will remove myself from the class if im that big of a threat because I do not want mrs lyons scared of me even though I do not know why she is when I did not do anything threatening to her to make her afraid . . . ." *Id.* In another email she wrote, "I'm sorry you feel this way, I was not being threatening when I wrote to Mrs. Lyons and reiterated what we talk about when she reached out to me twice and encouraged me to make a complaint . . . ." *Id.* at 5. Ms. Garcia never selected a date for a hearing or participated in a hearing per Ms. Frank's request.

On April 10, 2019 defendant Frank sent a letter to Ms. Garcia informing her that the university had decided to suspend her for sixteen months due to her repeated violations of the student code of conduct. The letter informed her that her "communications with Dr. Lyons this semester have caused concern and have, on several occasions, mirrored the interactions that resulted in your suspension from the University in 2018." ECF No. 17-4 at 1. Defendant Frank then stated "[y]ou are hereby suspended from Metropolitan State University of Denver until August 3, 2020. During this time you are not allowed on the Auraria campus." ECF No. 17-4 at 2. Ms. Garcia was suspended for sixteen months as of the date of defendant Frank's letter. *Id.*

## II. PROCEDURAL BACKGROUND

This case was initially filed on August 8, 2019. ECF No. 1. Defendants filed their answer on March 23, 2020. ECF No. 47. On October 10, 2019 plaintiff filed an amended complaint and jury demand. ECF No. 28. On October 24, 2018 defendants filed a motion to dismiss the amended complaint. ECF No. 31. This Court granted the motion to dismiss in part and denied it in part. ECF No. 42. Following that order the only remaining claims in this case are Ms. Garcia's Rehabilitation Act claims against the MSU Board of Trustees; her procedural due process claims against Janine Davison, Dave Haden, and Kelli Frank in their official capacities, and her procedural due process claims against Kelli Frank and Kristen Lyons in their individual capacities. *Id*. On April 2, 2021 defendants filed a motion for summary judgment for all of the remaining claims. ECF No. 90. Plaintiff never filed a response, and defendants filed their "reply" on May 7, 2021. The matter is ripe for review.

## III. STANDARD OF REVIEW

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248. The court reviews the factual record and makes reasonable inferences in the light most favorable to the party opposing summary judgment. *See Concrete Works of Colorado, Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

In this case Ms. Garcia was represented by counsel when the suit was filed, but her lawyer withdrew after being terminated by Ms. Garcia. *See* ECF No. 52. New counsel entered an appearance but later withdrew at Ms. Garcia's request. *See* ECF No. 73. Ms. Garcia was not represented by counsel when the motion for summary judgment was filed. Shortly after defendants' "reply" in support of their motion for summary judgment was filed, a third attorney entered on plaintiff's behalf. ECF No. 96. However, that lawyer moved to withdraw two weeks later at Ms. Garcia's request. ECF No. 100. Because the motion for summary judgment was filed and briefed by defendants at a time when Ms. Garcia was between lawyers, the Court has considered her to be a pro se party whose pleadings must be liberally construed.

## IV. ANALYSIS

Defendants move for summary judgment on all of plaintiff's claims. Defendants contend that Ms. Garcia's Rehabilitation Act claim must fail because defendants did not discriminate against her on the basis of her disability. ECF No. 90 at 8. Defendants also contend that Ms. Garcia's procedural due process claim must fail because defendants provided her with the process to which she was entitled. *Id*. at 9. As to her due process claim against defendants Frank and Lyons in their individual capacities, defendants contend they are both entitled to qualified immunity. *Id*. at 12. I begin with plaintiff's Rehabilitation Act claim.

### A. Rehabilitation Act Claim

Federal courts apply the standards articulated in the Americans With Disability Act ("ADA") cases to claims under the Rehabilitation Act and vice versa. *Cummings v. Norton*, 393 F.3d 1186, 1190 n.2 (10th Cir. 2005). The Rehabilitation Act prohibits any "program or activity" that receives federal financial assistance from discriminating against "otherwise qualified" individuals "solely by reason of [their] disability." 29 U.S.C.A. § 794(a). The term "program or activity" includes "a college, university, or other postsecondary institution, or a public system of higher education." *Id.* § 794(b)(2)(A). To state a claim under Section 504 of the Rehabilitation Act "a plaintiff must prove (1) that [s]he is a handicapped individual under the Act; (2) that [s]he is otherwise qualified for the benefit sought, (3) that [s]he was discriminated against solely by reason of [her] handicap, and (4) that the program or activity in question receives federal financial assistance." *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992). Defendants contend that they are entitled to summary judgment because plaintiff cannot establish that she was discriminated against "solely by reason of [her] handicap" under element three. ECF No. 90 at 8. I agree.

Plaintiff argues that her sixteen-month suspension from MSU was an act of disability discrimination. Although plaintiff did not respond to defendants' motion, the Court infers that plaintiff's theory of the case is that the unprofessional, threatening emails she sent her professors were a result of her disability. Therefore, defendants' suspending her because of those emails was an act of discrimination. I have considered all of the evidence before the Court to determine whether there is a genuine factual dispute on plaintiff's Rehabilitation Act claim. I conclude that there is not.

First, in the letter that notified Ms. Garcia of her suspension defendants listed the reasons for her suspension, none of which were related to her disability. ECF No. 17-4 at 1–3. These reasons included Ms. Garcia's insisting that her professor's exams were not legible and unfair, and that her professors were unethical; talking down to her professors; dismissing her professor's field as not scientifically valid; lying to the conduct officer about conversations she had with her professor in an attempt to influence the conduct officer's determination; accusing Professor Lyons of not speaking proper English; accusing Professor Lyons of "tricking or misleading students;" threatening to complain to the Department of Education if the professor did not change her grade; and threatening to contact the Department of Education for minor typographical errors on an exam. *Id*.

Additionally, the Court reviewed plaintiff's medical records as well as the response to defendants' motion to dismiss that plaintiff's previous lawyer filed. While there is no dispute that plaintiff suffered a traumatic brain injury and is entitled to accommodations, there is no evidence that Ms. Garcia required accommodations related to the content of her communications with professors. While the medical record demonstrates that Ms. Garcia has trouble communicating certain ideas or quickly processing things said to her, and as I have noted that she has trouble communicating fluidly and coherently, it does not suggest that Ms. Garcia lacks the ability to control the content of what she says. There is simply no evidence that these repeated unprofessional emails were a result of Ms. Garcia's disability.

Plaintiff also contends that there is evidence that MSU discriminated against Ms. Garcia because Professor Curl stated that Ms. Garcia "lack[ed] the capacity to remediate her behavior." ECF No. 17-8 at 2. In its order on the motion to dismiss the Court acknowledged that even

though Professor Curl himself did not suspend Ms. Garcia, it was *plausible* that defendants Frank and Haden acted on Professor Curl's potentially discriminatory statement when they decided to suspend her. ECF No. 42 at 24–25. A mere plausibility, however, is insufficient to survive summary judgment.

Here, Ms. Garcia has presented no evidence to link Professor Curl's statement to defendants' decision to suspend her. While plaintiff produced evidence of her disability, i.e., medical records, whether Ms. Garcia has a disability is not in dispute. From the date of her initial admission MSU acknowledged plaintiff's disability, and the Access Center worked with her to accommodate that disability. The Access Center also communicated her need for accommodations to each of her professors. When defendant Frank attempted to schedule Ms. Garcia's disciplinary hearing, she included Mr. Sullivan—a member of the Access Center—and wanted him to be present at the conduct hearing. This evidence demonstrates that defendants took her disability seriously and worked with her to try to accommodate that disability to the best of its ability.

The Court thus concludes that Professor Curl's isolated comment is insufficient to create a genuine dispute of fact as to whether defendants discriminated *solely* on the basis of Ms. Garcia's disability. Instead, the facts show that Ms. Garcia threatened and harassed Professor Kelly via email in 2018. MSU informed her then that such emails violated the student code of conduct, and Ms. Garcia sent strikingly similar emails to Professor Lyons in 2019. When Professor Lyons encouraged Ms. Garcia to formally appeal her exam grade through the appeal policy outlined in the syllabus, Ms. Garcia threatened filing a complaint to the Department of Education. When defendant Frank contacted Ms. Garcia about her interactions with her

professors, Ms. Garcia communicated numerous falsehoods to the university. Each of these instances are included in Ms. Garcia's suspension letter and serve as the basis for defendants' determination that suspension was necessary.

Accordingly, defendants have produced ample evidence to show that they suspended Ms. Garcia due to her repeated violations of student code of conduct. Plaintiff has produced no evidence to suggest that these reasons were invalid or pretextual. The Court thus concludes that no reasonable jury could find for plaintiff on her Rehabilitation Act claim, and defendants' motion for summary judgment as to this claim is GRANTED.

**B. Procedural Due Process Claim**

Ms. Garcia also alleges that defendants violated her right to procedural due process when they did not provide her with an opportunity to be heard prior to her suspension. ECF No. 28 at 30. She sues Janine Davidson, Dave Haden, and Kelli Frank in their official capacities and seeks prospective relief. She sues Kelli Frank and Kristen Lyons in their individual capacities. Defendants contend that they did give Ms. Garcia an opportunity to be heard, but she refused. ECF No. 90 at 10. Given plaintiff's lack of a response to defendants' motion, I consider the record in its entirety and draw all reasonable inferences in her favor to determine whether summary judgment is appropriate.

Any student who faces suspension has a due process interest and is entitled to at least minimal procedural protections. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). The Supreme Court decision in *Goss* sets the standard for the amount of process owed to students who face short-term suspensions from a public school or university. *Id*. There the Court held

> We do not believe that school authorities must be totally free from notice and hearing requirements if their schools are to operate with acceptable efficiency. Students facing

> temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.

*Id*. at 581. Although the *Goss* court explained that "longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures," it did not consider what those formal procedures might be. In the forty years since *Goss*, the Supreme Court has never answered what, if any, additional procedural protections are required for long-term suspensions or expulsions.

Although the Tenth Circuit has also not answered that question, it has identified certain procedural protections that are *not* required. In *Watson ex rel. Watson v. Beckel*, the New Mexico state military academy expelled a student for assaulting his roommate. 242 F.3d 1237, 1238 (10th Cir. 2001). Although defendants notified Watson of the charges against him and conducted a hearing, he requested that the court issue an order that required more protections due to the permanence of expulsion. *Id*. Specifically, he requested the court order that

> upon the proposed expulsion or long-term suspension of any student attending a state-supported educational institution, the student must be afforded written notice specifying the charges, legal counsel, the presentation of evidence, the right to examine witnesses, an impartial board, a transcript of the hearing, and independent review of the decision.

*Id.* at 1242–43. The court refused to do so and noted that those procedural protections are not required even in the case of long-term suspensions or expulsions. *Id*.

The Court has reviewed the record, including plaintiff's amended complaint, ECF No. 28, and her response to the motion to dismiss, ECF No. 34. In both documents plaintiff argues that defendants violated her procedural due process rights when they did not hold a hearing prior to

the issuance of an interim suspension that she alleges began on March 1, 2019. ECF No. 34 at 16. Defendants contend that no such suspension ever occurred. ECF No. 90 at 10. I again agree with defendants. The student code of conduct defines interim suspensions as a period of time in which "students shall be denied access to the campus, including classes and/or all other University activities or privileges for which the student might otherwise be eligible, as the Associate Vice President of Student Engagement and Wellness/ Dean of Students or designee may determine to be appropriate." ECF No. 17-7 at 16. The code of conduct further defines suspension as "[s]eparation of the student from the University for a definite period of time, after which the student is eligible to return." *Id*. at 15.

The Court acknowledges that summary judgment would be inappropriate if defendants had issued an interim suspension without process. The Court finds, however, that no interim suspension took place. On March 1, 2019 defendant Frank sent a letter to Ms. Garcia that notified her of the accusations against her, and that MSU's Student Conduct Department had opened an investigation to determine whether Ms. Garcia had violated the student code of conduct. ECF No. 17-3 at 1–3. The letter further requested that Ms. Garcia not participate in Professor Lyons' class while the investigation was pending. *Id*. However, the letter did not prohibit Ms. Garcia from "access[ing] . . . the campus, including classes and/or all other University activities or privileges for which the student might otherwise be eligible . . . ." ECF No. 17-7 at 16. Nor did it separate Ms. Garcia from the campus "for a definite period of time." *Id*. at 15. Ms. Garcia herself admits that during this time she attended her other classes and had continued access to the campus. ECF No. 28 at 14. Thus, the action taken by the university on March 1, 2019 did not rise to the level of an interim suspension or a suspension.

Additionally, the evidence shows that defendant provided Ms. Garcia with notice of the charges against her and an opportunity to be heard prior to the sixteen-month suspension imposed on April 10, 2019. The March 1, 2019 letter specified the accusations against her, namely, that she had been accused of sending repeated unprofessional, threatening emails in violation of Article III, Section B of the student code of conduct. ECF No. 17-3 at 1–3. That letter further stated "you are required to meet with [defendant Frank] or another Conduct Officer to discuss this matter. [MSU's conduct officers] would like to hear your perspective about what happened. During this hearing you will have the opportunity to discuss the reported incident(s), your actions, and the potential consequences and your options." *Id*. at 1.

Defendant Frank attempted to schedule a hearing with Ms. Garcia and with Mr. Sullivan, a representative from the Access Center. Ms. Frank proposed three dates on which she and Mr. Sullivan were available. ECF No. 90-8 at 7. Ms. Garcia said she would rather hold the hearing at the end of the month when her lawyer could be present, and then later asserted that any such meeting would be useless. ECF No. 90-8 at 3. Ms. Garcia never attempted to reschedule the hearing, nor did she choose one of the dates proposed by defendants. Her lack of hearing is thus the result of her own non-cooperation with Ms. Frank, not any unwillingness by defendants to hold the hearing or provide her with process.

The undisputed evidence further shows that despite Ms. Garcia's failure to cooperate, defendants provided her with the minimal protections outlined in *Goss*. After defendants notified Ms. Garcia of the charges against her, she explained her version of events in numerous emails to defendant Frank. *See* ECF No. 90-8. Defendant Frank used these emails as evidence to support her decision to suspend Ms. Garcia in her April 10, 2019 suspension letter. ECF No.

17-4. MSU's conduct officers therefore discussed the reported incidents with Ms. Garcia, heard her perspective on these incidents, and used these discussions to determine the requisite punishment. While a telephonic hearing undoubtedly would have been more formal, the *Goss* court makes clear that a formal hearing is not required. The *Goss* court explained that

> In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain [her] version of the facts at this discussion, the student first be told what [she] is accused of doing and what the basis of the accusation is.

*Goss*, 419 U.S. at 582. Ms. Garcia was therefore provided the minimal protections that *Goss* requires.[2]

Additionally, the student code of conduct permitted Ms. Garcia to have a representative of her choice at the conduct hearing. Ms. Garcia refused the three hearing dates that Ms. Frank proposed because her lawyer was not available for them, but she never proposed a different date on which she and her lawyer could meet. Ms. Garcia then backtracked and stated that she believed "the meeting [would be] useless as Mr. Sullivan cannot explain why the professor wrote bad wording on a test." ECF No. 90-8 at 3. As the *Goss* court stated, "[t]here need be no delay between the time notice is given and the time of the hearing." *Goss*, 419 U.S. at 582. And as the *Watson* court stated, even students who face expulsion do not have a constitutional right to legal counsel at any disciplinary hearing. *Watson ex rel. Watson*, 242 F.3d at 1242.

The Court thus finds that the undisputed facts show that Ms. Garcia was provided with the process to which she was entitled, but she refused to engage in that process. The Court

---

[2] The Court notes that *Goss* applies to short-term suspensions, and that neither the Supreme Court nor the Tenth Circuit have decided whether long-term suspensions require additional protections. However, as discussed above, Ms. Garcia did not have a formal disciplinary hearing due to her own non-cooperation, not due to defendants' unwillingness to hold a hearing. It is therefore Ms. Garcia's fault that she did not receive additional due process protections to which she may have been entitled.

concludes that no reasonable jury could find for plaintiff on her procedural due process claim against any of the defendants, either in their official or individual capacities. Accordingly, defendants' motion for summary judgment is GRANTED. Because the Court has found that there is no genuine dispute of fact as to plaintiff's procedural due process claim, the Court need not analyze whether defendants Frank and Lyons are qualifiedly immune from liability.

**ORDER**

1. Defendants' motion for summary judgment, ECF No. 90, is GRANTED. Counsel's motion to withdraw, ECF No. 100, is GRANTED. Ms. Garcia's motion for a continuance of the trial, ECF No. 101, is MOOT (and, in any event, no trial date was set after the previous date of June 17, 2021 was vacated).

2. The Court enters its final written judgment dismissing this civil action with prejudice. As the prevailing party, defendants are awarded reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, to be taxed by the Clerk following the submission of a bill of costs pursuant to the rule.

DATED 16th day of June, 2021.

BY THE COURT:

R. Brooke Jackson
United States District Judge